Samuel S. Schahet and Ruby Schahet v. Commissioner. Albert G. Reuben and Sara Reuben v. Commissioner.
Schahet v. Commissioner
Docket Nos. 62201, 62202.
United States Tax Court
T.C. Memo 1959-51; 1959 Tax Ct. Memo LEXIS 197; 18 T.C.M. (CCH) 243; T.C.M. (RIA) 59051; March 18, 1959
*197 On June 19, 1952, petitioners, the sole stockholders of Weather Guard Company, Inc., sold all the capital stock of Weather Guard to another corporation wholly owned by them. Held, on June 19, 1952, the fair market value of all the capital stock of Weather Guard Company, Inc., was at least $165,000. Harold R. Burnstein, Esq., and John W. Hughes, Esq., 105 W. Adams Street, Chicago, Ill., for the petitioners. Hubert E. Kelly, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income taxes for the taxable year 1952 as follows: Dkt. No.
Petitioner
Deficiency
62201
Samuel S. and Ruby
Schahet
$51,819.72
62202
Albert G. and Sara
Reuben
32,059.18
The only question is whether the capital stock of Weather Guard Company, Inc., had a fair market value on June 19, 1952, of $165,000, or some lesser figure. Another issue concerning whether or not the transfer by petitioners of all their stock in Weather Guard Company, Inc., to Alsco Indiana Corporation in exchange for $165,000 constituted a bona fide sale, has been conceded by respondent. Because of an uncontested *198 item of interest in the amount of $10.17, decision in docket number 62201 will be entered under Rule 50. Findings of Fact Some of the facts are stipulated, the stipulation being incorporated herein by this reference. Petitioners Samuel S. Schahet and Ruby Schahet are husband and wife, residing in Indianapolis, Indiana. They filed a joint Federal income tax return for the calendar year 1952 with the director of internal revenue for the district of Indiana. Petitioners Albert G. Reuben and Sara Reuben are husband and wife, residing in Indianapolis, Indiana. They filed a joint Federal income tax return for the calendar year 1952 with the director of internal revenue for the district of Indiana. Alsco Indiana Corporation (hereinafter referred to as Alsco Indiana) was organized and incorporated under the laws of Indiana in October 1946, with its principal office in Indianapolis, Indiana. It uses an accrual method of accounting, and maintains its books and files its returns on the basis of a fiscal year ending September 30. Since Alsco Indiana's inception, petitioners Samuel S. Schahet and Albert G. Reuben have been stockholders, members of its board of directors, and its principal *199 executive officers. During the year here involved, all of the corporation's outstanding capital stock was owned by petitioners. Alsco Indiana purchased aluminum extrusions, or parts, from Alsco, Inc., of Akron, Ohio, and assembled them into storm windows and storm doors. It then sold the assembled units to various dealers throughout the State of Indiana. During the years 1951 and 1952 Alsco Indiana's largest customer was Weather Guard Company, Inc., which accounted for about 60 per cent of its sales. Weather Guard Company, Inc. (name subsequently changed to Alsco of Indianapolis, Inc., but, for convenience, hereinafter referred to as Weather Guard), was organized and incorporated under the laws of Indiana in May 1947, with its principal office in Indianapolis, Indiana. It uses an accrual method of accounting, and maintains its books and files its returns on the basis of a fiscal year ending April 30. Weather Guard was sales agent in the city of Indianapolis and vicinity for aluminum storm windows and storm doors assembled by Alsco Indiana. It sold directly to homeowners under the trade name "Alsco". Weather Guard had no written dealership or supply contracts with Alsco Indiana. *200 The trade name "Alsco" is well known, and Alsco is a leader in the storm window industry. In 1951 and 1952 it represented about 25 per cent of the total market. The industry as a whole was made up of 5 or 6 major competitors, approximately 20 smaller producers, and numerous very small producers. At the time of Weather Guard's organization, 100 of its authorized shares of capital stock were subscribed to and issued at a par of $20 per share. During 1949 and 1950 Weather Guard purchased and retired all of its outstanding capital stock held by persons other than the petitioners. The following schedule lists the names of the original shareholders, a description of their relation to the corporation, the number of shares owned by each, the date their stock was reacquired, and the price paid per share upon reacquisition: Date reac-
Price paid per
No. of shares
quired by
share by
issued by
Weather
Weather
Shareholder
Description
8/1/47
Guard
Guard
Samuel S. Schahet
Petitioner
5
Ruby Schahet
Petitioner
23 3/4
Albert G. Reuben
Petitioner
10
Sara Reuben
Petitioner
10
Jack Arkin
Employee
5
1/ 8/48 $140
Gertrude Arkin
Wife of Jack Arkin
10
1/ 8/48
140
Nellie Wender
Ruby Schahet's mother
5
1/20/50
210
Ed Schenk
Employee
5
1/16/50
350
Aldine Schenk
Employee
5
1/16/50
350
S. L. Wansky
Employee of Alsco, Inc.
3 3/4
5/19/48
100
Newton Heller
Supplier
7 1/2
5/19/48
100
Marion Levin
Wife of an Alsco, Inc., employee
3 3/4
5/19/48
100
Helen Gorin
Sister of Mrs. Harry Sugar
1 1/4
5/19/48
100
Ben Sugar
Vice-President of Alsco., Inc.
2 1/2
5/19/48
100
Saul Sugar
Vice-President of Alsco, Inc.
1 1/4
8/26/49
120
Moses Goodman
Treasurer of Alsco., Inc.
1 1/4
5/19/48
100
*201 A schedule of Weather Guard's officers and directors is set forth below: 4/30/48
to
Name
4/1/47
4/30/53
Samuel S. Schahet
Director
Director
President
President
Albert G. Reuben
Director
Director
Sec.-Treas.
Max Zinet
Director
Sec.-Treas.
Louis W. Sagelowsky
Director
Ruby R. Schahet
Director
Sara Reuben
Director
When Weather Guard commenced business in 1947 it had 2 employees in addition to Samuel S. Schahet. During 1951 and 1952 it had approximately 40 dealer-salesmen contacting homeowners, 10 or 12 installers, 2 or 3 servicemen, and 6 office employees. The salesmen worked on a commission basis. Weather Guard did not have a personal service contract with Samuel S. Schahet, Albert G. Reuben, or any of its other employees. At a special meeting of the board of directors of Weather Guard, called on May 5, 1948, the chairman stated that it was advisable and proper that compensation of the officers of the company be fixed by the board. He pointed out that the steady growth of the company's business was due to the efficient and successful promotion and sales work of the officers and that such facts should be taken into consideration *202 in fixing the remuneration of the officers for the ensuing year. Similar statements appear in the minutes of meetings of the board of directors held on May 23, 1949, May 5, 1950, and May 3, 1951. Weather Guard's profit and loss statements for each of the fiscal years ending April 30, 1948, through April 30, 1952, are as follows: F/Y 1948
F/Y 1949
F/Y 1950
F/Y 1951
F/Y 1952
Sales
$273,627.05
$491,144.65
$637,468.71
$899,641.59
$978,209.71
Less cost of goods sold: Beginning inventory
$ 10,610.60
$ 19,002.65
$106,230.46
Purchases
$126,699.49
$290,316.01
350,125.30
570,010.91
464,999.10
Labor - installers
20,378.62
5,271.65
47,672.02
90,792.15
93,493.57
Total
$147,078.11
$295,587.66
$408,407.92
$679,805.71
$664,723.13
Less ending inventory
10,610.60
19,002.65
106,230.46
50,128.16
Total cost of goods sold
$147,078.11
$284,977.06
$389,405.27
$573,575.25
$614,594.97
Gross profit
126,548.94
206,167.59
248,063.44
326,066.34
363,614.74
Operating expenses: Salesmen's commissions
$ 19,605.50
$ 26,555.66
$ 25,358.67
$ 27,521.04
$ 17,697.23
Sales agents' commissions
52,395.60
70,847.31
102,838.47
136,051.28
161,123.31
Officers' salaries: Sam Schahet
25,150.00
25,150.00
25,150.00
Albert G. Reuben
20,125.00
20,125.00
20,125.20
Rent
3,425.00
1,480.00
932.50
720.00
2,245.00
Advertising
10,604.20
8,538.93
8,980.76
7,574.01
8,581.70
Traveling expense
3,911.17
1,227.70
2,261.82
4,374.24
4,718.30
Office salaries
6,987.85
8,692.30
15,653.71
15,543.42
17,701.93
Other expenses
16,820.44
32,266.87
26,204.07
32,886.06
37,922.43
Total expenses
$116,424.51
$189,080.84
$227,505.00
$269,745.05
$295,265.10
Net profit
$ 10,124.43
$ 17,086.75
$ 20,558.44
$ 56,321.29
$ 68,349.64
Less: Federal income tax
$ 2,228.62
$ 3,829.96
$ 4,639.61
$ 28,347.33
$39,610.76
Excess profits tax
5,159.95
9,568.95
Net profit to surplus
$ 7,895.81
$ 13,256.79
$ 15,918.83
$ 27,973.96
$ 28,738.88
*203 Comparative balance sheets for Weather Guard for each of the fiscal years ending April 30, 1948, through April 30, 1952, are set forth below: F/Y 1948
F/Y 1949
F/Y 1950
F/Y 1951
F/Y 1952
Assets: Cash
$ 2,522.56
$ 24,284.14
$ 9,913.28
$ 30,433.75
$ 40,519.11
Accounts and other receivables
9,391.55
19,825.50
46,227.21
47,831.58
85,075.29
Advances to employees
79.54
962.55
1,077.55
255.00
363.94
Accounts and loans receivable - other
15,241.00
2,256.58
657.60
95.41
88.83
Inventory
10,610.60
19,002.65
106,230.46
50,128.16
Prepaid items
303.06
2,500.00
4,000.00
4,000.00
4,000.00
Total current assets
$ 27,537.71
$ 60,439.37
$ 80,878.29
$188,846.20
$180,175.33
Fixed assets - net
2,395.55
3,147.72
2,988.03
2,591.04
2,194.05
Other assets
126.39
190.50
50.00
25.00
Treasury stock
2,100.00
Total assets
$ 32,159.65
$ 63,777.59
$ 83,916.32
$191,437.24
$182,394.38
Liabilities and capital: Accounts payable
$ 15,354.57
$ 34,266.38
$ 44,611.82
$100,419.12
$ 43,936.60
Reserve for Federal income tax
2,228.62
12,023.41
4,639.61
28,347.33
41,515.08
Other current liabilities
4,690.65
1,685.20
10,081.96
11,097.90
15,161.32
Total current liabilities
22,263.84
47,974.99
59,332.39
139,854.35
100,613.00
Common stock
2,000.00
1,300.00
975.00
975.00
975.00
Earned surplus
7,895.81
14,502.60
23,608.93
50,607.89
80,806.38
Total liabilities and capital
$ 32,159.65
$ 63,777.59
$ 83,916.32
$191,437.24
$182,394.38
*204 In the fall and winter of 1951 Harry Sugar, president of Alsco, Inc., offered, on behalf of his company, to buy Weather Guard for $175,000. The offer was never accepted. On June 19, 1952, the petitioners sold their Weather Guard stock to Alsco Indiana for $165,000. The price paid for the stock was based upon the net book value of Weather Guard plus the value of intangibles (good will). The value of the intangibles was computed substantially as suggested in respondent's publication A.R.M. 34, 2 C.B. 31, that is, by determining the average earnings for the previous 5 years, allowing a return of 8 per cent upon the average net worth, and capitalizing the difference between the average earnings and the 8 per cent return on tangibles. This computation is set forth below: Average net worth for five years
ended April 30, 1952: Net worth as of: Inception
$ 2,000.00
4/30/48
9,895.81
4/30/49
15,802.60
4/30/50
24,583.93
4/30/51
51,582.89
4/30/52
81,738.88
Total
$185,604.11
Average
$ 30,934.02
Average earnings after all taxes: Earnings fiscal year ended: 4/30/48
$ 7,895.81
4/30/49
13,256.79
4/30/50
15,918.83
4/30/51
30,408.57 [1]
4/30/52
28,738.88
Total earnings
$ 96,218.88
Average earnings
$ 19,243.78
8% return on average net worth
$ 2,474.72
Difference between average earn-
ings and 8% return
$ 16,769.06
Capitalized at 5 times for value of
intangibles
$ 83,845.30
Book value of net worth
$ 81,738.88
Value of intangibles
83,845.30
Total
$165,584.18
Total amount received
$165,000.00
*205 Petitioners reported the gain from the sale of their Weather Guard stock as a long-term capital gain. On June 19, 1952, the outstanding capital stock of Weather Guard had a fair market value not less than $165,000. Opinion VAN FOSSAN, Judge: The question is whether the fair market value of all the outstanding capital stock of Weather Guard on June 19, 1952, was at least $165,000. If not, what was it? Petitioner contends that the fair market value was at least $165,000, the price paid for the stock on June 19, 1952, by Alsco Indiana. Respondent contends that the fair market value of the stock at the time of the transaction was not in excess of $81,738.88, the agreed book value of net worth, and that the value assigned to intangibles, $83,845.30, is taxable to petitioners as a dividend. We have found as a fact that the fair market value of the stock on June 19, 1952, was not less than $165,000. The best evidence of the value of an article at a given *206 time and for which there is no established market is the amount which a prospective buyer is willing to pay and a willing seller is willing to accept, both parties acting in good faith. Halbert K. Hitchcock, 4 B.T.A. 273 (1926). Petitioner Samuel S. Schahet testified that in the fall and winter of 1951 Harry Sugar, president of Alsco, Inc., offered to purchase Weather Guard for $175,000. This fact was corroborated by Sugar. Schahet further testified that in his opinion the fair market value of the Weather Guard stock was $200,000 on June 19, 1952, the date of its sale to Alsco Indiana. The testimony given by Schahet and Sugar is uncontradicted and was unshaken upon cross-examination. Respondent offered no testimony as to the value of the stock. "It has long been held by this Court that - if the evidence adduced by one party in support of a proposed valuation is clear, convincing and uncontradicted and no reason for disbelieving or discounting such evidence is present, and if the adverse party neither weakens the testimony by cross-examination nor produces any evidence on his own behalf, the party producing the evidence should prevail." Anita M. Baldwin, 10 B.T.A. 1198, 1201 (1928). *207 Petitioners' valuation is also supported by a computation made in accordance with A.R.M. 34, 2 C.B. 31, the method suggested by respondent in 1920 and used repeatedly thereafter by both respondent and taxpayers in valuation cases. George J. Staab, 20 T.C. 834 (1953); Estate of A. Bluestein, 15 T.C. 770 (1950); Robertson v. Routzahn, 75 Fed. (2d) 537 (C.A. 6, 1935). Of course, this or any other formula does not, of itself alone, necessarily establish the amount of good will. Estate of Robert R. Gannon, 21 T.C. 1073 (1954). It is but one method of computation. The rate of earnings, the risk involved, and the general nature of the business and other factors must combine to demonstrate that a value in excess of the tangible assets actually exists. The number of years over which the earnings should be averaged, the per cent to be attributed to tangible assets, and the basis of the capitalization of the remaining earnings are questions to be determined from all existing facts and circumstances. Dwight & Lloyd Sintering Co., Inc., 1 B.T.A. 179 (1924). The average earnings of Weather Guard were computed *208 over the entire history of the company. In the fiscal year ending April 30, 1948, the first year of its operation, Weather Guard had sales of $273,627.05, total assets of $32,159.65, and a net profit before Federal taxes of $10,124.43. In the fiscal year ending April 30, 1952, it had sales of $978,209.71, total assets of $182,394.38, and a net profit before Federal taxes of $68,349.64. During each of the years 1950, 1951, and 1952 Weather Guard paid salaries to its 2 officers totalling $45,275. Inventories were small in comparison with sales, and salesmen were paid on a commission basis. Weather Guard had demonstrated a capacity for rapid growth and had provided a return on capital far in excess of that which might reasonably have been expected from the small investment in tangible assets. In the light of all the facts and circumstances, it does not appear that a value for intangibles computed by capitalizing excess earnings at a rate of 20 per cent was inconsistent with reality. See Otis Steel Co., 6 B.T.A. 358 (1927). Respondent contends that no valuation for intangibles or good will should be included in the computation of the fair market value of the Weather Guard *209 stock, since Weather Guard had no franchise or exclusive rights contract to sell Alsco products. Respondent further contends that Weather Guard's earnings resulted not from its selling organization but from the personal abilities of Samuel S. Schahet and Albert G. Reuben. We are unable to agree with respondent's views. Weather Guard was a direct selling organization. Such an organization, unlike an automobile agency or similar retail outlet which may depend upon a franchise or product name to bring business to its doors, must rely principally upon the resourcefulness and perseverance of its sales force in actively soliciting customers. In 1951 and 1952 Weather Guard had approximately 40 dealer-salesmen operating in the Indianapolis area. The existence and successful operation of this sales unit gave Weather Guard a value far in excess of the worth of its tangible assets. The offer of $175,000 for all of the stock of the company included intangible as well as tangible assets. It is not unreasonable to assume that a competitor of Alsco, Inc., would have been willing to pay a similar sum. As stated by Judge Cardozo, "Men will pay for any privilege that gives a reasonable expectancy *210 of preference in the race of competition." Matter of Brown, 242 N. Y. 1, 150 N.E. 581, 582 (1926). Weather Guard had an unusual history of growth and earnings. The offer to purchase for $175,000, mentioned above, was made approximately 6 months before the sale to Alsco Indiana. The value assigned to intangibles, computed in accordance with respondent's suggested method, appears to be reasonable in the light of all the facts and circumstances. We are of the opinion that petitioners have shown the fair market value of the Weather Guard stock to have been at least $165,000 on June 19, 1952. Sidney V. LeVine, 24 T.C. 147 (1955). Decision will be entered under Rule 50 in Docket No. 62201. Decision will be entered for the petitioners in Docket No. 62202. Footnotes
1. The earnings of Weather Guard after taxes for the fiscal year ended April 30, 1951, as indicated by the profit and loss statement, are $27,973.96 rather than $30,408.57. This discrepancy is unexplained by the record.↩